Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| ISMAEL SANTIAGO PONCE<br><br>Apelante<br><br>V.<br><br>ISMAEL OMAR SANTIAGO TORRES<br><br>Apelado | KLAN202400041 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Núm.: AR2023CV01456<br><br>Sobre: Incumplimiento de Contrato |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2024.

El 16 de enero de 2024, compareció ante este Tribunal de Apelaciones, el señor Ismael Santiago Ponce, (en adelante, parte apelante o señor Santiago Ponce), mediante recurso de *Apelación.* En el mismo, nos solicita que revisemos la *Sentencia* emitida y notificada el 15 de diciembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Arecibo. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Solicitud de Desestimación* presentada por el señor Ismael Omar Santiago Torres (en adelante parte apelada o señor Santiago Torres).

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

## I

El caso que nos ocupa tiene su origen en una *Demanda sobre cumplimiento específico y daños y perjuicios* interpuesta por el señor Santiago Ponce en contra del señor Santiago Torres el 4 de agosto de 2023. En adelante, procedemos a resumir las confusas alegaciones de la aludida *Demanda.*

En apretada síntesis, el señor Santiago Ponce alegó que, para el año 2012, se encontraba separado de su entonces esposa, y decidió comprar una propiedad inmueble en el pueblo de Rincón. Ante la posibilidad de enfrentar un proceso de divorcio, el señor Santiago Ponce le solicitó a su hijo, el señor Santiago Torres, que compareciera simuladamente como comprador de la referida propiedad, con el compromiso de que, posteriormente, se la transfiriera mediante escritura pública cuando así se lo requiriera. Ello, a fin de que la susodicha propiedad no figurara como un bien ganancial. Acotó que, luego de obtener el consentimiento del señor Santiago Torres, le compró la propiedad en controversia al señor Mario Irenes, mediante una transacción verbal.

Alegadamente, quien era el verdadero dueño y vendedor de la propiedad en cuestión era el señor Mario Irenes, quien, a su vez, la había adquirido previamente del señor Alonso Rivera Vélez, de forma verbal y se figuró que este era quien le vendía al señor Santiago Ponce para evitar los gastos que generaría la compraventa del señor Alfonso Rivera Vélez al señor Mario Irenes.

Según se desprende de las alegaciones de la *Demanda*, la compraventa simulada se realizó el 30 de agosto de 2012, por el precio acordado entre el señor Mario Irenes y el señor Santiago Ponce de ciento setenta y cinco mil dólares ($175,000.00). Dicha suma fue satisfecha mediante la entrega de un vehículo Porsche modelo Carrera y un Lexus 500 para un total de ciento cuarenta mil dólares ($140,000.00) y los restantes treinta y cinco mil dólares ($35,000.00) fueron pagados en efectivo. Sin embargo, en la escritura número setenta y uno (71)[1], se figuró que se le estaba pagando al señor Rivera Vélez con tres vehículos de motor, a los que

---

[1] Cabe mencionar que, aunque en la *Demanda* se hace referencia a la escritura número setenta y uno (71), otorgada ante el Notario Público Roberto González Sánchez, el 30 de agosto de 2012, se anejó a la misma copia simple de la escritura número ciento setenta y uno (171) sobre Compraventa con Ley 216 otorgada ante el Notario Público Roberto González Sánchez el 30 de agosto de 2012.

se les asignó un valor de ciento diez mil dólares ($110,000.00) y que la diferencia de sesenta y cinco mil dólares ($65,000.00) se pagó en efectivo.

En la *Demanda* se añadió que, para el año 2018, el señor Joan Manuel Santiago Amador –quien también es hijo del señor Santiago Ponce– necesitaba realizar una transacción financiera, en la cual le requirieron ofrecer como parte de la garantía, un bien inmueble. Ante ello, el señor Santiago Amador le solicitó al señor Santiago Ponce que le diera la propiedad inmueble en cuestión para garantizar dicho préstamo, además de su garantía personal.

El señor Santiago Ponce alegó que, a raíz de esta solicitud, acordó con el señor Santiago Torres, el traspaso de la propiedad inmueble a través de otra venta simulada, en la cual se figurara que este último le había vendido a su hermano Joan Manuel Santiago Amador, de modo que, este pudiera darla como garantía. Lo anterior, con el compromiso de que luego de que saldara el préstamo, que, a su vez, suscribiría la parte apelada, se hiciera otra escritura transfiriendo la propiedad al alegado verdadero dueño, el señor Santiago Ponce. Dicho sea de paso, este último también figuraba como codeudor del mencionado préstamo. La aludida compraventa simulada se realizó mediante la escritura número quince (15), otorgada el 12 de abril de 2018, ante el notario Alberto Pérez Roselló, por el precio de $350,000.00.[2]

La parte apelante alegó, además, que la parte apelada no tenía medios económicos para pagar el precio de la propiedad y tampoco era el dueño de los vehículos que se indicó en la escritura que se le entregó al vendedor Rivera Vélez. Insistió en que la función de la parte apelada se limitó a comparecer de forma simulada en la escritura como comprador de la propiedad.

---

[2] Véase anejo 30 del exhibit 2, Demanda.

Acotó el señor Santiago Ponce que, se enteró de que la parte apelada había radicado una acción en cobro de dinero en contra de su hermano Santiago Amador, caso número AR2021CV00477[3], a sabiendas de que él no era dueño y de haber sido partícipe de las escrituras simuladas. **La controversia entre ambos hermanos culminó mediante un acuerdo de transacción en el que acordaron que, el señor Santiago Amador traspasaría la titularidad de la propiedad en cuestión mediante escritura, a nombre del señor Santiago Torres. El 24 de julio de 2023, cuando el foro primario emitió *Sentencia por Desistimiento con Perjuicio.***

A raíz de lo anterior, el señor Santiago Ponce, le solicitó al señor Santiago Torres el traspaso de la propiedad inmueble a su nombre, a lo cual el señor Santiago Torres se negó.  Debido a que el señor Santiago Torres no efectuó el traspaso de la aludida propiedad al señor Santiago Ponce, el 4 de agosto de 2023, este último presentó la *Demanda* sobre cumplimiento especifico y daños y perjuicios que da origen a este caso y en la cual, reclamó el cumplimiento específico del contrato, más la suma de cincuenta mil dólares ($50,000.00) en concepto de angustias mentales.

Luego de varias incidencias procesales innecesarias de pormenorizar, el 5 de septiembre de 2023, la parte apelada presentó la *Moción Asumiendo la Representación Legal y en Solicitud de Desestimación.* Conforme surge de esta, el señor Santiago Torres, le solicitó al *foro primario* la desestimación de la *Demanda.* Argumentó que, las alegaciones de la parte apelante no exponían una reclamación que justificara la concesión de un remedio[4]. En

---

[3] Cabe mencionar que, a pesar de que la parte apelante hizo referencia de dicho caso tanto en la Demanda incoada contra el señor Santiago Torres como en el recurso que nos ocupa, no anejó a su recurso ni un solo documento del mencionado caso.  Ante ello, nos vimos precisadas de tomar conocimiento judicial del referido caso mediante una búsqueda en SUMAC para poder atender en sus méritos la controversia planteada.

[4] Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V., R. 10.2(5).

particular, la parte apelada alegó que, las alegaciones 9, 10, 11, 12, 13, 14 de *la Demanda* no cumplían con el criterio de plausibilidad.[5]

Añadió la parte apelada que, la titularidad de la propiedad en controversia había sido dirimida en un pleito anterior (AR2021CV00477) por hechos similares a la controversia del presente caso. Expresó que, cualquier intento de relitigar la controversia constituye cosa juzgada.

En respuesta, el 6 de septiembre de 2023, el señor Santiago Ponce presentó *R[é]plica a Moción de Desestimación*, en la que arguyó que, la *Moción de Desestimación* solo ataca un vicio intrínseco en la *Demanda* y es el Tribunal quien debía ponderar si existía o no una reclamación válida.

En igual fecha, el Tribunal de Primera Instancia celebró una *Vista Para Medidas Provisionales*[6], en la cual dictaminó, entre otros asuntos, lo siguiente: 1) *No Ha Lugar*, a la solicitud de remedio provisional incoada por la parte demandante; 2) *No Ha Lugar*, a la *Moción de Desestimación* de la parte demandada; 3) Concedió a la parte demandada hasta el 15 de septiembre de 2023 para proveerle a la parte demandante la escritura de compraventa de la propiedad en controversia; 4) Concedió hasta el 26 de septiembre de 2023 para que la parte demandada contestara la *Demanda* y las partes se cursaran entre sí el descubrimiento de prueba; 5) Señaló vista sobre el estado de los procedimientos para el 22 de diciembre de 2023, a las 9:00am mediante videoconferencia. A estos efectos, el 18 de septiembre de 2023, notificada el día siguiente, el foro *a quo*, emitió *Resolución y Orden.*

---

[5] La Regla 6.1 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 6.1 establece que, una alegación debe exponer una solicitud de remedio que exponga lo siguiente: una relación sucinta y sencilla de los hechos de que la parte peticionaria tiene derecho a un remedio y una solicitud al remedio al que crea tener derecho.

[6] La Minuta de la referida vista fue transcrita el 7 de septiembre de 2023.

El 13 de septiembre de 2023, el señor Santiago Torres, presentó una *Moción Urgente en Solicitud de Desestimación*, en la que argumentó, en esencia, que la *Demanda* estaba prescrita desde el 12 de abril de 2019. En particular, arguyó que, había transcurrido más de un año desde la compraventa, por lo cual, el señor Santiago Ponce, no tenía derecho alguno, ya que había prescrito el término para ejercer la acción en daños y perjuicios.

Posteriormente, el 10 de octubre de 2023, la parte apelada presentó una *Moción Reafirmando Desestimación*, en la cual reiteró su solicitud de *Desestimación* por prescripción. Subsiguientemente, el 25 de octubre de 2023, el señor Santiago Torres, presentó un documento titulado *Tercera Moción de Desestimación*, en la cual reiteró los mismos argumentos.

En respuesta, el 26 de octubre de 2023, la parte apelante incoó ante el foro primario *Réplica a Moción de Desestimación*. En esencia, reiteró las alegaciones de su *Demanda* y añadió que la escritura otorgada entre la parte apelada y su hermano en abril de 2018 es nula, por no tener causa y no ser real, por lo que, no surtió efecto jurídico alguno. Arguyó que, no existía término alguno para ejercitar su causa de acción, por lo que, solicitó al foro primario que denegara la moción de desestimación.

Finalmente, el 15 de diciembre de 2023, el foro *a quo* emitió la *Sentencia*, cuya revisión hoy nos ocupa. En virtud de esta, dispuso lo siguiente:

[.....]

[E]l presente caso versa sobre la compraventa de cierta propiedad la cual se alega se llevó a cabo de forma simulada entre el demandante, Ismael Santiago Ponce y su hijo Ismael Omar Santiago Torres.

Como cuestión de hecho, las alegaciones de la demanda 9, 10, 11, 12, 13 y 14 dándolas como ciertas y bien hechas y examinándolas de la manera más favorable al demandante versan sobre actos fraudulentos hechos en común acuerdo entre demandante y demandado, lo cual implica consentimiento del demandante en dicho

acto fraudulento. El demandante pretende revertir lo fraudulentamente pactado entre las partes.

Por otro lado, el demandante alega que todas las transacciones que dan base a su causa de acción son simuladas, pero en cuanto a la alegación número 15 que versa sobre otra transacción simulada entre Ismael Omar Santiago Torres y el hermano del [demandado], Joan Manuel Santiago Amador, es importante señalar que[,] recientemente el demandado transó un caso (AR2021CV00477) con dicha parte, que se litigó por dos años, gozó de determinación del Tribunal de Apelaciones y del Tribunal Supremo de Puerto Rico. A esos efectos, se dictó sentencia la cual es hoy final, firme e inapelable en la que el Tribunal pasó juicio sobre ciertos hechos y alegaciones de fraude e impartió aprobación sobre acuerdo transaccional sin determinación específica de dolo. Esta alegación en particular es cosa juzgada. Es evidente para este Tribunal que dentro de dicho pleito se atendieron controversias análogas y pertinentes a la causa de acción lo cual impide que las mismas sean reevaluadas en el presente pleito por ser cosa juzgada.

Inconforme con lo determinado por el foro *a quo*, la parte apelante acudió ante este foro revisor mediante el recurso de *Apelación* que nos ocupa, en el que esgrimió los siguientes señalamientos de error:

- Erró el TPI, Sala de Arecibo[,] al desestimar la demanda por cosa juzgada cuando el pleito al que hizo referencia fue entre otras partes y el reclamo fue distinto, privando al apelante sumariamente de un reclamo al que dando las alegaciones por ciertas tiene derecho.

- Erró el TPI, Sala de Arecibo[,] al desestimar la demanda y no dar por ciertos los hechos bien alegados en la Demanda.

El 8 de febrero de 2024, compareció la parte apelada mediante *Escrito en Oposición a Apelación*. Con el beneficio de la comparecencia de las partes procedemos a resolver.

**II**

### A. Deferencia Judicial

Según es sabido, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos. *Argüello v. Argüello*, 155 DPR 62 (2001); *Pueblo v. Bonilla Romero*, 120 DPR 92,

111 (1987); *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011); *SLG Rivera Carrasquillo v. AAA*, 177 DPR 345, 356 (2009); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022).

Sin embargo, la deferencia judicial no es absoluta, pues podrá ser preterida en ciertas instancias. Nuestro Máximo Foro ha reiterado que, los tribunales apelativos "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto". *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021); *SLG Rivera Carrasquillo v. AAA*, supra, pág. 356; *Ortiz Ortiz v. Medtronic*, supra, pág. 778; *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022)[7].

No obstante, "la tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Empero, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013). Es por lo que, nuestra más Alta Curia ha definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". (Citas omitidas). *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435.

**B. *Cosa Juzgada y el Impedimento Colateral por Sentencia***

En nuestro ordenamiento jurídico, la doctrina de cosa juzgada se encuentra fundamentada en consideraciones de orden público, el

---

[7] Véase también *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013).

interés del Estado en ponerle fin a los litigios y en proteger a los ciudadanos para que no se les someta en múltiples ocasiones a los rigores de un proceso judicial.[8] La aludida doctrina ha sido descrita como una "presunción que opera cuando entre el caso resuelto por la sentencia y aquel en que esta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron". *SLG Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 153 (2011). Esta doctrina se entiende como "lo ya resuelto por fallo firme de un Juez o Tribunal competente, y lleva en sí la firmeza de su irrevocabilidad".[9] Es por lo que, su propósito es darles fin a los litigios después de ser adjudicados de manera definitiva por los tribunales, y, de esta forma, garantizar la certidumbre y seguridad de los derechos declarados por el tribunal para así evitar gastos adicionales tanto al Estado como a los litigantes.[10]

Nuestra Máxima Curia ha resuelto que la doctrina de cosa juzgada no opera de forma automática, sino que está sujeta al cumplimiento de una serie de requisitos.[11] Debe haber *identidad de cosas.* Sobre este particular, se ha dicho que: "el segundo pleito se refiere al mismo asunto del que versó el primer pleito, aunque las cosas se hayan disminuido o alterado".[12] Existirá identidad de cosa cuando un juez o una juez, al realizar una determinación, se expone a contradecir el derecho declarado en una determinación anterior.[13] Otro requisito es *la identidad de causas.* Esta existe cuando "los hechos y los fundamentos de las peticiones son idénticos en lo que

---

[8] Véase *Parrilla v. Rodríguez,* 163 DPR 263, 268 (2004); *Mun. de San Juan v. Bosque Real, S.E.,* 158 DPR 743, 769 (2003); *Pérez v. Bauzá*, 83 DPR 220, 225 (1961).

[9] *SLG Szendrey-Ramos v. Consejo Titulares*, supra, págs. 153-154 citando a *Parrilla v. Rodríguez*, supra, pág. 268, citando a J.M. Manresa, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1967, T. VIII, Vol. 2, pág. 278. Véase *Presidential v. Transcaribe*, 186 DPR 263, 275 (2012).

[10] *Íd*, págs. 273-274; *SLG Szendrey-Ramos v. Consejo Titulares*, supra, pág. 154.

[11] *Presidential v. Transcaribe,* supra, pág. 274; *SLG Szendrey-Ramos v. Consejo Titulares*, supra, pág. 155.

[12] *Presidential v. Transcaribe*, supra, pág. 274.

[13] *Íd*, págs. 274-275.

afecta a la cuestión planteada".[14]  Para determinar la existencia de identidad de causas será necesario examinar si ambas reclamaciones versan en la misma transacción o núcleo de hechos.[15] Sobre la identidad de causas, se señaló en *A & P Gen Contractors v. Asoc. Caná,* supra, a la pág. 765, que en el contexto particular de la doctrina de cosa juzgada y de impedimento colateral por sentencia, tal requisito significa el fundamento capital, es decir, el origen de las acciones o excepciones planteadas y resueltas.

Otro de los requisitos es la *identidad de las personas* de los litigantes y la calidad en que lo fueron. Sus efectos se extienden a aquellos que intervienen en el proceso, a nombre y en interés propio. Es decir, "las personas jurídicas que son parte en ambos procedimientos, cumplidos los requisitos de identidad entre las causas y las cosas, serían las mismas que resultarían directamente afectadas por la excepción de cosa juzgada".[16]

Por otro lado, en nuestro acervo jurídico se ha reconocido la figura del **impedimento colateral por sentencia** como una modalidad de la doctrina de cosa juzgada.  El impedimento colateral por sentencia "surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final, [y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas."[17]  Es decir, el impedimento colateral por sentencia impide que se litigue en un litigio posterior un hecho esencial que fue adjudicado mediante sentencia final en un litigio anterior.  No obstante, a diferencia de la doctrina de cosa juzgada, la aplicación de la figura de impedimento colateral por sentencia no exige la identidad de causas, esto es, que

---

[14] *Íd. A & P Gen Contractors v. Asoc. Caná,* 110 DPR 753 (1981).
[15] *Presidential v. Transcaribe,* supra, pág. 275.
[16] *Íd,* pág. 276.
[17] *A & P Gen Contractors v. Asoc. Caná,* supra, pág. 762.

la razón de pedir plasmada en la demanda sea la misma en ambos litigios.[18]  Al igual que la doctrina de cosa juzgada, el propósito de la figura del impedimento colateral por sentencia es promover la economía procesal y judicial, y amparar a los ciudadanos del acoso que necesariamente conlleva litigar en más de una ocasión hechos ya adjudicados.  *P.R. Wire Prod. v. Crespo & Assoc.* 175 DPR 139, 152-153 (2008).

Nuestra última instancia judicial ha señalado que la doctrina del impedimento colateral por sentencia, es una matización de la doctrina de cosa juzgada, la cual persigue el fin de los litigios y garantiza la certidumbre y seguridad de los derechos declarados.[19] En igual sentido, este precepto jurídico "tiene como propósito promover la economía procesal y judicial, proteger a los litigantes contra lo que representa defenderse o probar sus reclamaciones en repetidas ocasiones tratándose de la misma controversia, evitar litigios innecesarios y decisiones inconsistentes".[20]

En términos prácticos, el impedimento colateral por sentencia "impide que en un pleito posterior se relitiguen cuestiones de hecho o derecho necesarias para la adjudicación de un pleito anterior, independientemente de que haya sido por la misma causa de acción o por otra distinta, siempre que sea entre las mismas partes o sus causahabientes".[21]  Para que aplique, es necesario que concurran los siguientes requisitos: **(1) que el asunto de hecho o derecho sea el mismo en ambos pleitos; (2) que se haya litigado en un pleito anterior; (3) que se haya determinado mediante una sentencia final, y (4) que la determinación haya sido esencial para el fallo**.[22]  *Universal Ins. y otro v. ELA y otros*, 211 DPR 455, 469-470 (2023).

---

[18] Véase *Rodríguez Rodríguez v. Colberg Comas*, 131 DPR 212, 219 (1992).
[19] *Beníquez v. Vargas,* 184 DPR 210, 225 (2012).
[20] *Presidential v. Transcaribe,* supra, pág. 277.
[21] *Marrero Rosado v. Marrero Rosado,* 178 DPR 476, 497 (2010).
[22] *Íd*, págs. 469-470.

En resumen, se ha establecido jurisprudencialmente que para que se configure la defensa de cosa juzgada se tiene que cumplir con los siguientes requisitos: (1) una primera sentencia válida, la cual advino final y firme que adjudicó los hechos y resolvió la controversia en los méritos; (2) las partes en ambos juicios deben ser las mismas; (3) era la misma controversia objeto en cada juicio; (4) que el remedio que se solicita sea análogo al que se pidió en el caso anterior y, por último, (5) que las partes en ambos litigios comparezcan en la misma calidad.[23]

La doctrina de cosa juzgada emana el impedimento colateral por sentencia. Este último se diferencia de la doctrina de cosa juzgada al no requerir que las controversias objeto del litigio sean las mismas.[24] *Figueroa Santiago et als. v. ELA,* supra, págs. 933-934.

### C. *La Moción de Desestimación*

La Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, faculta a la parte contra la cual se presente una alegación en su contra a presentar una moción de desestimación, por los fundamentos siguientes: 1) falta de jurisdicción sobre la materia; 2) falta de jurisdicción sobre la persona; 3) insuficiencia del emplazamiento; 4) insuficiencia del diligenciamiento del emplazamiento; 5) dejar de exponer una reclamación que justifique la concesión de un remedio, y 6) dejar de acumular una parte indispensable. *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 396 (2022); *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013). La precitada regla permite a la parte demandada presentar una moción de desestimación debidamente fundamentada previo a contestar la demanda instada en su contra. *Casillas Carrasquillo v.*

---

[23] *Figueroa Santiago et als v. ELA,* 207 DPR 923, 933 (2021).
[24] *Presidential v. Transcaribe,* supra, págs. 276-277 (2012).

*ELA,* 209 DPR 240, 247 (2022); *Conde Cruz v. Resto Rodríguez et al,* 205 DPR 1043, 1065 (2020).

Asimismo, el Tribunal Supremo de Puerto Rico ha establecido que, al momento de considerar una moción de desestimación, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorable a la parte demandante. *Cobra Acquisitions v. Mun. Yabucoa et al.,* supra; *Casillas Carrasquillo v. ELA,* supra; *Rivera Sanfeliz v. Jta. Dir. FirstBank,* supra, pág. 49; *Cruz Pérez v. Roldán Rodríguez, et al.,* 206 DPR 261, 267 (2021); *Colón Rivera et al. v. ELA,* supra, pág. 1049. Es por lo que, para que proceda una moción de desestimación, "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de [D]erecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor". *Cobra Acquisitions v. Mun. Yabucoa,* supra; *Casillas Carrasquillo v. ELA,* supra; *Cruz Pérez v. Roldán Rodríguez et al.,* supra, págs. 267-268; *Rivera Sanfeliz v. Jta. Dir. FirstBank,* supra, pág. 49; *Ortiz Matías et al. v. Mora Development,* 187 DPR 649, 654 (2013).

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

En su primer señalamiento de error, la parte apelante nos plantea, en esencia, que incidió el foro de primera instancia al desestimar la *Demanda* bajo el fundamento de cosa juzgada debido a que el pleito al que había hecho referencia alegadamente fue sobre un reclamo distinto y entre otras partes.

A los fines de atender este primer señalamiento, repasemos brevemente la madeja de eventos fácticos, en su mayoría simulados, relatados por la parte apelante y que, según arguye la parte

apelante, dan base a su reclamo. Mediante el extenso recuento de eventos fraudulentos, la parte apelante pretendió persuadir al Tribunal de que él es el verdadero dueño de la propiedad inmueble en controversia.

La parte apelante alegó que, ante la posibilidad de un divorcio, a fin de que la propiedad que interesaba adquirir no figurara como un bien ganancial, le solicitó a la parte apelada que compareciera simuladamente como comprador de la misma con el compromiso de que, posteriormente, se la transfiriera mediante escritura pública cuando así se lo requiriera. Acotó que, luego de obtener el consentimiento del señor Santiago Torres, le compró la aludida propiedad al señor Mario Irenes, mediante una transacción verbal por el precio de ciento setenta y cinco mil dólares ($175,000.00).

Así las cosas, figuraron de forma simulada, el señor Alonso Rivera Vélez como vendedor e Ismael Omar Santiago Torres, como comprador, en la escritura número 71 otorgada el 30 de agosto de 2012 ante el Notario Roberto González Vargas.[25] Lo anterior, a pesar de quien era el verdadero dueño y vendedor de la propiedad en cuestión era el señor Mario Irenes, quien, a su vez, la había adquirido del señor Alonso Rivera Vélez, de forma verbal. Se figuró que este era quien le vendía al señor Santiago Ponce para evitar los gastos que generaría la compraventa del señor Alfonso Rivera Vélez al señor Mario Irenes.

Alegó la parte apelante que, la compraventa simulada se realizó el 30 de agosto de 2012, por el precio de ciento setenta y cinco mil dólares ($175,000.00); suma que fue satisfecha mediante la entrega de un vehículo Porsche modelo Carrera y un Lexus 500, valorados ambos en ciento cuarenta mil dólares ($140,000.00) y los

---

[25] Como dijimos, aunque en la *Demanda* se hace referencia a la escritura número setenta y uno (71), otorgada ante el Notario Público Roberto González Sánchez, el 30 de agosto de 2012, se anejó a la misma copia simple de la escritura número ciento setenta y uno (171) sobre Compraventa con Ley 216 otorgada ante el Notario Público Roberto González Sánchez el 30 de agosto de 2012.

restantes treinta y cinco mil dólares ($35,000.00) fueron pagados en efectivo. Cabe mencionar que, en la escritura número setenta y uno (71), se figuró que se le estaba pagando al señor Rivera Vélez con tres vehículos de motor, a los que se les asignó un valor de ciento diez mil dólares ($110,000.00) y que la diferencia de sesenta y cinco mil dólares ($65,000.00), se pagó en efectivo. Sostuvo la parte apelante que, desde que compró la propiedad a través de la parte apelada, tomó posesión de la misma, teniendo su absoluto uso, disfrute, y control, y explotando la misma comercialmente.

En la *Demanda* se añadió que, para el año 2018, el señor Joan Manuel Santiago Amador –quien también es hijo del señor Santiago Ponce– necesitaba realizar una transacción financiera en la cual le requirieron ofrecer como parte de la garantía, un bien inmueble. Ante ello, el señor Santiago Amador le solicitó al señor Santiago Ponce que le diera la propiedad inmueble en cuestión para garantizar dicho préstamo, además de su garantía personal.

El señor Santiago Ponce alegó que, a raíz de esta solicitud, acordó con el señor Santiago Torres, el traspaso de la propiedad inmueble a través de otra venta simulada, en la cual se figurara que este último le había vendido a su hermano Joan Manuel Santiago Amador, de modo que, este pudiera darla como garantía. Lo anterior, con el compromiso de que luego de que se saldara el préstamo que suscribiría la parte apelada, se hiciera una escritura transfiriendo la propiedad al alegado verdadero dueño, el señor Santiago Ponce. Dicho sea de paso, quien también figuraba como codeudor del mencionado préstamo. La aludida compraventa simulada se realizó mediante escritura número quince (15), otorgada el 12 de abril de 2018, ante el notario Alberto Pérez Roselló

y en la misma se consignó como precio de venta, la suma trescientos cincuenta mil dólares ($350,000.00).[26]

La parte apelante adujo que, la parte apelada no tenía medios económicos para pagar el precio de la propiedad y tampoco era el dueño de los vehículos que se indicó en la escritura que se le entregó al vendedor Rivera Vélez. Insistió en que la función de la parte apelada se limitó a comparecer de forma simulada en la escritura como comprador de la propiedad.

Como mencionamos anteriormente, argumenta la parte apelante que no procede aplicar la doctrina de *cosa juzgada* al caso de marras, toda vez que, las partes en el caso AR2021CV00477 no son las mismas. Aduce que, en el primer caso las partes eran la parte apelada Santiago Torres y Santiago Amador y que él nunca fue parte del pleito.

Resulta meritorio destacar que, según las propias alegaciones de la parte apelante, esta advino en conocimiento de que la parte apelada había radicado una acción en cobro de dinero en contra de su hermano Santiago Amador, caso número AR2021CV00477. Dicho pleito entre ambos hermanos culminó mediante un acuerdo de transacción en el que el señor Santiago Amador traspasaría la titularidad de la propiedad en cuestión mediante escritura, a nombre del señor Santiago Torres. Consecuentemente, el 24 de julio de 2023, el foro primario emitió *Sentencia por Desistimiento con Perjuicio*. Es precisamente en virtud del referido dictamen, que el foro *a quo* declaró Ha Lugar la *Solicitud de Desestimación* presentada por el señor Ismael Omar Santiago Torres que nos atiene.

Tal y como dispone el derecho previamente esbozado, para que se configure la defensa de cosa juzgada se tiene que cumplir con los siguientes requisitos: (1) una primera sentencia válida, la cual

---

[26] Véase anejo 30 del exhibit 2, Demanda.

advino final y firme que adjudicó los hechos y resolvió la controversia en los méritos; (2) las partes en ambos juicios deben ser las mismas; (3) era la misma controversia objeto en cada juicio; (4) que el remedio que se solicita sea análogo al que se pidió en el caso anterior y, por último, (5) que las partes en ambos litigios comparezcan en la misma calidad.[27]

Ahora bien, de la doctrina de cosa juzgada emana el impedimento colateral por sentencia. Este último se diferencia de la doctrina de cosa juzgada al no requerir que las controversias objeto del litigio sean las mismas.[28] La doctrina de impedimento colateral "surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final, [y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén involucradas causas de acción distintas".[29] *Figueroa Santiago et als. v. ELA*, supra, págs. 933-934.

El impedimento colateral por sentencia "impide que en un pleito posterior se relitiguen cuestiones de hecho o derecho necesarias para la adjudicación de un pleito anterior, independientemente de que haya sido por la misma causa de acción o por otra distinta, siempre que sea entre las mismas partes o sus causahabientes".[30] Para que aplique, es necesario que concurran los siguientes requisitos: **(1) que el asunto de hecho o derecho sea el mismo en ambos pleitos; (2) que se haya litigado en un pleito anterior; (3) que se haya determinado mediante una sentencia final, y (4) que la determinación haya sido esencial para el fallo**. *Universal Ins. y otro v. ELA y otros*, supra, págs. 469-470.

---

[27] *Beniquez et al v. Vargas et al.,* supra, págs. 221-225.
[28] *Presidential v. Transcaribe,* supra, págs. 276-277.
[29] *Presidential v. Transcaribe,* supra, pág. 277.
[30] *Marrero Rosado v. Marrero Rosado*, supra, pág. 497 (2010).

En adelante analizaremos si en el caso que nos ocupa concurren los requisitos antes reseñados. Veamos.

*Primero,* el asunto de hecho o derecho es el mismo en ambos pleitos. Ambos pleitos versan sobre el mismo objeto o asunto, esto es, la propiedad inmueble ubicada en el municipio de Rincón. Se desprende de los hechos de la *Demanda* que, la misma propiedad que alega compró la parte apelante es la misma propiedad que vendió simuladamente la parte apelada al señor Santiago Amador. *Segundo,* en el pleito anterior se ventiló y el foro primario adjudicó, la titularidad de la propiedad inmueble en controversia. *Tercero,* respecto a la titularidad de la propiedad en cuestión, la primera instancia judicial emitió una *Sentencia* que es final, firme e inapelable. *Cuarto,* tanto en el pleito anterior como en el que da lugar al presente recurso, la determinación sobre la titularidad del aludido bien inmueble es esencial para el fallo.

Los casos están tan relacionados entre sí, al punto que en ambos casos se repiten varias de las alegaciones respecto a las mismas partes. Dicho de otro modo, gran parte de las defensas afirmativas levantadas por la parte demandada en el primer caso, descansan en las que constituyen las alegaciones de la parte apelante en el caso de marras. A manera de ejemplo; la parte demandada en el caso anterior, entre sus defensas afirmativas, alegó que:

> 25. La reclamación del demandante es una frívola y temeraria, conociendo este que adquirió el título mediante una escritura simulada. De igual manera, el demandante compareció en la escritura relacionada en la Demanda, que es nula.
>
> 26. La escritura número 71, en virtud de la cual "adquirió" el demandante la propiedad descrita en el párrafo tres (3) de la Demanda, fue una simulada que se otorgó el 30 de agosto de 2012 ante el notario Roberto González Sánchez.
>
> 27. En la escritura número 71 antes relacionada, comparece simuladamente como vendedor el Sr. Alfonso Rivera Vélez, a pesar de que quien era el

verdadero dueño y vendedor era el Sr. Mario Irenes. Este último le compró de forma verbal la propiedad al Sr. Alfonso Rivera Vélez, previo al 30 de agosto de 2012, y se hizo figurar que era quien le vendía al demandante para evitar los gastos que generaría la compraventa del señor Alfonso Rivera Vélez al señor Mario Irenes.

28. El padre del demandante, el señor Ismael Santiago Ponce, le compró de forma verbal la propiedad al Sr. Mario Irenes, quien, a su vez, la había adquirido de forma verbal al Sr. Alfonso Rivera Vélez.

29. En la escritura 71 de 30 de agosto de 2012, se figuró que el demandante estaba pagándole al vendedor con tres (3) vehículos de motor y el valor asignado a estos totalizaban $110,000.00. Se figuró también que la diferencia de $65,000.00 del precio de venta se pagó por el demandante mediante varios pagos en efectivo. Sin embargo, los tres (3) vehículos que se relacionan en la escritura eran de la propiedad de quien realmente le había comprado al Sr. Alfonso Rivera Vélez, Mario Irenes, quien fue también quien pagó los $65,000.00 en efectivo para completar los $175,000.00 que se pagó por la propiedad.

30. Una vez Mario Irenes adquiere de forma verbal la propiedad, acuerda venderle la misma al padre del demandante, Ismael Santiago Ponce, quien aceptó comprarle por $175,000.00 como, en efecto, lo hizo.

31. Para agosto de 2012, el Sr. Ismael Santiago Ponce estaba separado de su esposa y madre del codemandado, Zoraida Amador Robles, y no quería que ella figurara en la escritura. Por ello, Santiago Ponce conversó con su hijo demandante, cuya madre era una distinta a la del codemandado, para ver si estaba de acuerdo en figurar simuladamente como el comprador. El demandante aceptó y compareció en la escritura como comprador.

32. El demandante no tenía medios económicos para poder pagar el precio de la propiedad, tampoco era dueño de los tres vehículos que se describen en la escritura y que falsamente se manifiesta que se los entregó al vendedor Sr. Alonso Rivera Vélez, ya que el dueño de estos y quien le entregó los mismos fue el Sr. Mario Irenes, mucho antes de la fecha en que se otorgó la escritura.

33. El precio de venta acordado entre el Sr. Mario Irenes y el Sr. Ismael Santiago Ponce fue $175,000.00 que pagó, éste último mediante la entrega de un vehículo Porsche Carrera y un Lexus 500 que totalizaron $140,000.00, conforme al acuerdo al que llegaron ambas partes. El balance del precio de $35,000.00 lo pagó el Sr. Ismael Santiago Ponce a través de varios pagos en efectivo. Este realmente era el contrato de compraventa que se ocultó a través de la interposición como comprador al demandante. Para esa fecha, el Sr. Mario Irenes tenía un dealer para la venta

de autos en Toa Baja que operaba bajo el nombre Toy Box.

34. El demandante conocía y conoce que nunca compró la propiedad y que prestó su consentimiento para participar en una venta simulada como cobertura para su padre poder ocultar esta transacción de su entonces esposa, de quien estaba separado. El contrato de compraventa solo pretendió ocultar el verdadero comprador. Por consiguiente, la venta simulada es una relativa que provoca que quede sin efecto la cobertura del contrato y prevalezca el verdadero que es la compra de Ismael Santiago Ponce.

35. El demandante no tiene forma de probar que realizó pago alguno, a pesar de que figuró originalmente como comprador en la escritura. El demandante no realizó pago alguno para convertirse en comprador.

36. La actitud temeraria del demandante es tal que, al radicar esta acción, conocía que su padre, Ismael Santiago Ponce, quien se divorció por la causal de consentimiento mutuo de Zoraida Amador Robles, quien era su esposa al momento de la compra en agosto de 2012, incluyó como parte de los acuerdos del divorcio la propiedad en cuestión. Particularmente, en la sentencia dictada se estableció que la Sociedad Legal de Gananciales compuesta por ambos tenía tres (3) inmuebles que no estaban a su nombre; se estableció que la propiedad que alega el demandante era suya y se la vendió a su hermano, estaba a nombre del codemandado Joan Manuel Santiago Amador. Estas tres (3) propiedades que no estaban a nombre de la Sociedad Legal de Gananciales se las adjudicó Ismael Santiago Ponce, y su exesposa Zoraida Amador Robles renunció libre y voluntariamente a cualquier participación y/o crédito que tenga o pudiera tener en las mismas. El demandante conocía y conoce que la propiedad en cuestión nunca fue de él.

37. La escritura que otorgaron las partes fue una simulada. La simulación es una absoluta, ya que el acto jurídico de la alegada compraventa no tuvo nada de real y solo creó la apariencia de un negocio, carente de causa, que lo convierte en nulo e inexistente que no produce efecto jurídico alguno.

38. La Demanda está basada en alegaciones y teorías falsas que se presentaron a sabiendas de su mendacidad. El Comité Asesor Permanente de las Reglas de Procedimiento Civil de 2009 puntualizó que la Regla 6.1 de Procedimiento Civil de 2009, sobre las alegaciones, se debía analizar junto con la Regla 9.1 que dispone que "el contenido de las alegaciones debe estar basado en el mejor conocimiento, información y creencia del abogado o de la parte, el cual debe formarse luego de una investigación razonable; que el escrito debe estar bien fundado en los hechos y respaldado por el derecho vigente". (Énfasis nuestro). Véase, Informe de Reglas de Procedimiento Civil, Vol. I, diciembre 2007, pág. 70.

[.....]

Lo anterior demuestra que la madeja de "negocios jurídicos" fraudulentos desencadenó en dos pleitos entre las partes. No albergamos duda de que ambos casos giran en torno a la misma cadena de eventos acontecidos entre las mismas partes. Cabe puntualizar que la controversia sobre la titularidad de la propiedad ya el foro de primera instancia le puso fin mediante la *Sentencia* final y firme dictada en el caso AR2021CV00477, por lo que no procede la relitigación de dicho asunto. Colegimos que, *ante las circunstancias particulares de este caso*, procede que apliquemos la doctrina de cosa juzgada, en la modalidad de impedimento colateral por sentencia. Consecuentemente, resolvemos que no se cometió el primer error señalado.

Por último, en su *segundo señalamiento de error*, la parte apelante sostiene que, el foro primario incidió al desestimar la *Demanda* y no dar por ciertos los hechos "bien alegados" en esta.

Como mencionamos, la Regla 10.2 de Procedimiento Civil, le permite a la parte demandada presentar una moción de desestimación debidamente fundamentada previo a contestar la demanda instada en su contra[31]. Entre los fundamentos contemplados por la precitada Regla, figura el dejar de exponer una reclamación que justifique la concesión de un remedio. Al respecto, nuestro Máximo Foro ha dispuesto que, al resolverse una moción de desestimación por el fundamento de que las alegaciones de una demanda dejan de exponer una reclamación que justifique la concesión de un remedio, el juzgador debe dar por buenas y ciertas todas las alegaciones fácticas delineadas en la demanda. Es decir, los hechos deben ser aseverados de forma adecuada, así como

---

[31] *Casillas Carrasquillo v. ELA*, supra, pág. 247; *Conde Cruz v. Resto Rodríguez*, supra, pág. 1065.

expresados de forma clara, concluyente, y, que de su faz no den margen a dudas[32]. A su vez, debe, considerar las alegaciones del modo más favorable para la parte demandante[33]. Ahora bien, el promovente de una solicitud de desestimación prevalecerá si demuestra al Tribunal que, dando por cierto todos los hechos correctamente alegados en la demanda, en esta, no se expone una reclamación que justifique la concesión de un remedio[34]. Es importante destacar que, la demanda no debe ser desestimada, a menos que se desprenda con certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación[35]. Entonces, es necesario considerar si, a la luz de la situación más favorable para el demandante, y, resolviendo toda duda a su favor, la demanda es suficiente para constituir una reclamación válida.

La Regla 6.1 de Procedimiento Civil[36], dispone que las alegaciones de la demanda deben tener una relación sencilla y sucinta de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio y una solicitud del remedio al que crea tener derecho.[37] *Primero*, se deben aceptar como ciertas las alegaciones de la demanda, con excepción de aquellas que sean concluyentes, conclusiones de derecho o aquellas alegaciones que presenten hechos generalizados. *Segundo*, procede determinar si a base de las alegaciones bien formuladas en la demanda, el demandante ha establecido que tiene una reclamación, la cual amerita la concesión de un remedio. En síntesis, los hechos deben

---

[32] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); *Sánchez v. Aut. de los Puertos*, 153 DPR 559 (2001); *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 505 (1994); *Colón v. Lotería*, 167 DPR 625, 649 (2006).
[33] *Cobra Acquisitions v. Mun. Yabucoa et al.*, supra; *Casillas Carrasquillo v. ELA*, supra*; Rivera Sanfeliz v. Jta. Dir. FirstBank*, supra, pág. 49; *Cruz Pérez v. Roldán Rodríguez et al.*, supra, pág. 267; *Colón Rivera et al. v. ELA,* supra, pág. 1049.
[34] *Pressure Vessels P.R. v. Empire Gas P.R.*, supra, pág. 505.
[35] *Consejo Titulares v. Gómez Estremera et al.*, 184 DPR 407, 423 (2012); *Pressure Vessels P.R. v. Empire Gas P.R.,* supra, pág. 505.
[36] Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1
[37] *Bco. Central Corp. v. Capitol Plaza, Inc.*, 135 DPR 760, 763-764 (1994).

contener información específica, todo a su vez que, la especulación no es suficiente para sostener una causa de acción.

En la causa de epígrafe, la parte apelante alega que, el foro primario incidió al desestimar la *Demanda*, al no dar por ciertos todos los hechos "bien alegados" en su reclamación. Sobre este particular, el Tribunal de Primera Instancia determinó que, las alegaciones de la Demanda 9, 10, 11, 12, 13 y 14, "dándolas como ciertas y bien hechas y examinándolas de la manera más favorable al demandante versan sobre actos fraudulentos [,] hechos en común acuerdo entre el demandante y el demandando", por lo cual, desestimó la causa ante nuestra consideración. En particular, las aludidas alegaciones leen de la siguiente manera:

9. En la relacionada escritura 71, otorgada por el demandado, el 30 de agosto de 2012 se figuró que este estaba pagándole al vendedor, Alfonso Rivera Vélez, con tres vehículos de motor y el valor asignado a estos totalizaban $110,000.00. Se figuró también la diferencia de $65,000.00 del precio de venta, se le pagó por el demandado mediante varios pagos en efectivo. Los tres vehículos que se relacionan en la escritura eran de la propiedad de quien realmente le había comprado al Sr. Alfonso Rivera Vélez, Mario Irenes quien fue también quien pagó los $65,000.00 en efectivo para completar los $175,000.00 que pagó por la propiedad.

10. Una vez Mario Irenes adquiere de forma verbal la propiedad, acuerda venderle la misma al demandante quien aceptó comprarle por $175,000.00, como en efecto lo hizo.

11. El demandado no tenía medios económicos para poder pagar el precio de la propiedad, tampoco era dueño de los tres vehículos que se describen en la escritura y que falsamente se manifiesta que él se los entregó al vendedor Sr. Alfonso Rivera Vélez, ya que el dueño de estos y quien le entregó los mismos fue el Sr. Mario Irenes, mucho antes de la fecha en que se otorgó la escritura. La función del demandado únicamente fue comparecer en la escritura de forma simulada como el comprador con el propósito de que el demandante no figurara como comprador en unión a la sociedad legal de gananciales que tenía compuesta para esa fecha como consecuencia de la separación que tenía de su esposa.

12. El precio de venta acordado entre el Sr. Mario Irenes y el Sr. Ismael Santiago Ponce fue de $175,000.00 que pagó este último mediante la entrega de un vehículo Por[s]che, modelo Carrera y un Lexus

500 que totalizaron $140,000.00 conforme al acuerdo al que llegaron ambas partes. El balance del precio de $35,000.00 los pagó el Sr. Ismael Santiago Ponce a través de varios pagos en efectivo. Este realmente era el contrato de compraventa que se ocultó a través de la interposición como comprador al demandado. Para esa fecha el Sr. Mario Irenes tenía un dealer para la venta de autos en Toa Baja que operaba bajo el nombre Toy Box.

13. El demandado conocía y conoce que él nunca compró la propiedad y que prestó su consentimiento para participar en una venta simulada como cobertura para poder ocultar su padre, esta transacción a su esposa en aquel momento de quien estaba separado. El contrato de compraventa fue uno real que solo pretendió ocultar el verdadero comprador, en este caso el demandante. Por consiguiente, la venta simulada es una relativa que provoca que quede sin efecto la cobertura del contrato y prevalezca el verdadero que es la compra de Ismael Santiago Ponce quien es el dueño de la propiedad.

14. La actitud temeraria del demandado es tal, que conociendo que su padre, Ismael Santiago Ponce quien se divorció de Zoraida Amador Robles por la causal de consentimiento mutuo, la que fue su esposa al momento de la compra en agosto de 2012, incluyó como parte de los acuerdos del divorcio la propiedad objeto de esta reclamación. Estas tres propiedades que no estaban a nombre de la Sociedad Legal de Gananciales se las adjudicó Ismael Santiago Ponce y su exesposa Zoraida Amador Robles, renunci[ó] libre y voluntariamente a cualquier participación y/o crédito que tenga o pudiera tener en las mismas. Véase anejo 2. De manera que era conocido, sin lugar a dudas, para el demandado que[,] esa propiedad nunca fue de él.

Al aplicar la norma jurídica atinente a las Reglas 10.2 (5) y 6.1 de las Reglas de Procedimiento Civil, *supra,* debemos tener presente que para que la parte pueda prevalecer debe demostrar que ha formulado unas alegaciones que sobrepasaron lo imaginable y lo factible y no "bajo cualquier estado de hechos". Es decir, para evitar la desestimación, el demandante debió establecer bases fácticas en las cuales descansó su reclamación, suficientes para elevar su derecho a la concesión de un remedio. En consonancia con lo anterior, las alegaciones de la parte demandante deben ser expresadas, más allá de lo especulativo.

En este caso, el señor Santiago Ponce alegó en la *Demanda* que, era el dueño de la propiedad en controversia, ya que había

adquirido el inmueble mediante el intercambio de dos vehículos de motor y una suma restante en dinero en efectivo. Alegó que, la parte apelada, por el contrario, no tenía los medios económicos para adquirir la propiedad en controversia y que, mediante un acuerdo entre ambos, la parte apelada compró la propiedad inmueble simuladamente.

Luego de un ponderado y sereno análisis de las alegaciones de la *Demanda*, colegimos que la parte apelante no proveyó bases fácticas en las cuales pudiera descansar su reclamación. En otras palabras, las alegaciones de la parte apelante, meramente se basaron en una madeja de compraventas y negocios simulados en los que nada resulta ser lo que se aparenta. Es importante reiterar que, las alegaciones deben contener bases fácticas e información específica, todo a su vez que, la especulación no es suficiente para sostener una causa de acción. En otras palabras, para que la reclamación sobrepase una *Moción de Desestimación*, la parte apelante debió presentar alegaciones que, rebasaran lo especulativo y hayan sido sostenidas con hechos concretos y evidencia fehaciente, lo cual está ausente en este caso.

Por esta razón, aún aceptado como ciertas y bien formuladas todas las alegaciones de la parte apelante, este no estableció que es merecedor de un remedio. Razonamos que, no erró el Tribunal de Primera Instancia al desestimar la *Demanda*.

**VI**

Por los fundamentos previamente expuestos, se *confirma* el dictamen apelado.

Por último y tomando en consideración lo antes expuesto, particularmente, lo consignado en la *Demanda* por la propia parte apelante en las alegaciones 9, 10, 11, 12, 13 y 14, así como lo resuelto por el foro primario, se ordena el referido del asunto ante la

atención del Departamento de Hacienda para la acción correspondiente.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones